# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

KENNETH E. SINYARD, )
)
      Plaintiff, )
)
      v. ) Case No. CIV-15-186-SPS
)
CAROLYN W. COLVIN, )
Acting Commissioner of the Social )
Security Administration, )
)
      Defendant. )

## OPINION AND ORDER

The claimant Kenneth E. Sinyard, requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining that he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id.* § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1]Step One requires the claimant to establish that he is not engaged in substantial gainful activity.  Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities.  If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied.  If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work.  At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC.  Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born July 31, 1968, and was forty-five years old at the time of the administrative hearing (Tr. 28, 146). He earned his GED in 2003, and has previously worked as an automobile mechanic and automobile parts clerk (Tr. 18, 160). The claimant alleges that he has been unable to work since August 1, 2010, due to depression, anxiety, panic attacks and social phobia, back injury, chronic prostatitis, and a bulging disk in back and neck (Tr. 159).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, on December 20, 2011. His application was denied. ALJ James Bentley conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated February 28, 2014 (Tr. 10-20). The Appeals Council denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except that he limited the claimant to simple tasks with routine supervision and having no more than occasional contact with coworkers and supervisors (Tr. 14). The ALJ then concluded that although the claimant could not

return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *i. e.*, surveillance systems monitor, food beverage order clerk, and final assembler (Tr. 18-19).

**Review**

The claimant contends that the ALJ erred: (i) by failing to properly evaluate the opinion of his treating physician, Dr. Rick Robbins, and (ii) by failing to properly assess his credibility. The Court finds the claimant's first contention persuasive.

The ALJ determined that the claimant had the severe impairments of lower back pain, disc disease, cervicalgia, chronic pain, depression/anxiety, lumbosacral spondylosis without myelopathy, mild degenerative disc disease throughout the thoracic spine, hernia, methamphetamine abuse in remission, and cannabis abuse (Tr. 12). The relevant medical evidence reflects that the claimant's treating physician was Dr. Robbins as far back as 2009. Treatment notes from Dr. Robbins from 2009 through 2011 include diagnoses of abdominal pain, fibromyalgia and prostatitis (Tr. 343-349). A May 5, 2009 CT of the abdomen revealed two small right renal cysts and a very small left renal lesion, as well as previous granulomatous disease (Tr. 364). In May 2010, Dr. Robbins referred the claimant for CT evaluation in response to complaints of abdominal pain. The CT of the abdomen and pelvis revealed bilateral renal cortical cysts, an enlarged prostate, and bilateral pars defects at the L5 level with a grade 1 spondylolisthesis of L5 on S1 (Tr. 303). An MRI of the lumbar spine revealed minimal degenerative disc disease at L5-S1 without spinal canal or neural foraminal stenosis, and mild retrolisthesis of L4 in relation to L5 which may in part be due to facet arthropathy changes (Tr. 305). An MRI

of the thoracic spine on August 10, 2010 revealed a small paracentral disk herniation at T7-T8, and mild degenerative disk disease throughout the thoracic spine (Tr. 307). In 2011, Dr. Robbins referred the claimant to Dr. Gerald Wahman due to symptoms of chronic prostatitis, and he assessed the claimant with chronic prostatitis and incomplete bladder emptying (Tr. 464).

A February 23, 2012 MRI of the lumbar spine revealed chronic bilateral spondylolysis L5 with minimal spondylolisthesis L5-S1, and minimal facet arthropathy slight retrolisthesis at L5-L5 (Tr. 491). On January 15, 2013, Dr. Robbins noted that the claimant had a "real bad" hernia with severe pain, and that the claimant wanted to know what to do to fix it (Tr. 498).

On January 6, 2011, the claimant tested positive for marijuana (Tr. 524). On December 20, 2011, the claimant presented for mental health treatment and was assessed with major depression that was moderate and recurrent, as well as anxiety (Tr. 324). Follow-up mental health records from 2013 reveal that the claimant reported ongoing problems with short-term memory and concentration (Tr. 505).

Dr. Robbins completed a mental functional assessment questionnaire for the claimant on January 12, 2012, indicating his psychiatric diagnoses were depression and chronic pain syndrome with symptoms of fatigue, insomnia, and feeling depressed (Tr. 335). He stated that the claimant's insomnia interfered with the claimant's mental alertness, and that he was unable to concentrate or follow directions (Tr. 335).

On February 21, 2012, Dr. Diane Brandmiller completed a mental status evaluation of the claimant, finding that he had depressive disorder not otherwise specified

5

and cannabis abuse (Tr. 373). She noted the claimant's reports of poor concentration, and stated that the claimant's long-term memory, short-term memory, and concentration appeared intact but that abstract thinking appeared mildly impaired (Tr. 373). Four days later, Dr. Traci Carney completed a physical consultative examination, which left her with the impression that the claimant had low back pain, cervicalgia, chronic pain, chronic prostatitis, history of fatty liver disease, fatigue, depression, tobacco abuse, remote history of methamphetamine abuse, and THC usage (Tr. 379).

Dr. Edith King, Ph.D. completed a mental RFC Assessment, indicating that the claimant was moderately limited in the three typical categories of ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general public (Tr. 388). She stated that the claimant could perform simple and some complex tasks with routine supervision, relate to peers and supervisors in superficial work settings, relate to the general public, and adapt to a work situation (Tr. 389). Dr. Walter Bell found that the claimant could perform the full range of medium work (Tr. 406).

On September 20, 2013, Dr. Robbins completed a medical opinion form regarding absences from work, stating that the claimant would be absent from work about three or more days per month (the most available to choose from on that form) (Tr. 532). He also completed forms regarding sedentary work requirements, a clinical assessment of pain, and a physical RFC assessment. He indicated, *inter alia*, that the claimant could not stand/walk up to two hours in an eight-hour workday, sit up to six hours, lift/carry ten pounds or five pounds repetitively, or sustain activity at a pace and with the attention to

task as would be required in the competitive workplace (Tr. 533). He indicated that the claimant's pain was irretractably and virtually incapacitating, that rest and/or medication was necessary as well as a reduction in basic mental work activities, and that he was so restricted as to be unable to function at a productive level of work (Tr. 534). Finally, he indicated that the claimant had a fair prognosis, that his pain was generally a five out of ten (with ten being the worst) and an eight out of ten on bad days, and that prescription pain medication does not eliminate his pain (Tr. 535). He stated that the claimant was incapable of even a low-stress job, due to his pain medications and concentration problems, and that he could sit twenty minutes at one time and stand forty-five minutes at one time, and sit/stand/walk less than two hours total (Tr. 536-537). He indicated the claimant would need to shift positions at will, and that he could never twist, stoop, crouch/squat, or climb ladders or stairs (Tr. 537-538). He then indicated that the claimant would be absent from work, on average, more than four days per month (Tr. 538).

The medical opinions of treating physicians are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight. The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to

which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins*, 350 F.3d at 1300-1301, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301 [quotations and citations omitted]. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

Here, the ALJ summarized the claimant's testimony as well as the medical record (Tr. 14-18). He then found that the claimant's subjective allegations were out of proportion to the medical evidence, stating that the MRI testing revealed only minimal or mild degenerative disc disease (Tr. 17). He did not give great weight to the state reviewing physician opinion that the claimant could perform medium work, but afforded substantial weight to the state physician opinions as to the claimant's mental RFC because he found them to be "objective, balanced, and consistent with the medical evidence as a whole" (Tr. 17). As to the opinions expressed by Dr. Robbins, the ALJ declined to give these opinions great weight, finding that the record "clearly contradicted these opinions," pointing to the claimant's hobby of putting model cars together, the fact he (an auto mechanic) had changed the oil in his car three times over the past three years, and had performed occasional housework. Furthermore, the ALJ stated that the

8

claimant's daily activities were inconsistent because he lived with his wife and they cared for his ten-year-old stepson (Tr. 18).

The ALJ's opinion here reflects that he failed to properly assess Dr. Robbins's opinion as a treating physician. The Commissioner proffers the arguments that the ALJ's limited sedentary RFC assessment was appropriate because: (i) the claimant's enjoyment of assembling model cars belies his complaints about the inability to concentrate, (ii) two state physicians did not find impairments to his concentration, and (iii) the claimant collected unemployment benefits after being fired. The Court notes that these first two arguments are improper *post hoc* rationales and declines to adopt them. *See Haga v. Astrue*, 482 F.3d 1205, 1207-1208 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.") [citations omitted]. Furthermore, the Court notes that the claimant's actual testimony was that it is difficult for him to get out and do things with his stepson and he often will "lie around in the chair," and that he likes to build model cars but that with his pain he "can't get [his] head right to work on anything like that, so [he] just [leaves] well enough alone" (Tr. 39-40). Indeed, the ALJ rejected every opinion in the record regarding the claimant's physical limitations and there is no explanation for how the claimant's limitation to sedentary work accounts for his severe physical impairments, nor does it properly account for the evidence regarding the claimant's purported concentration problems. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as the

9

significantly probative evidence that he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

Accordingly, the Commissioner's decision must be reversed and the case remanded to the ALJ for further analysis. On remand, the ALJ should properly evaluate *all* the evidence. If the ALJ's subsequent analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 28th day of September, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**